UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DERRICK D. BLASSINGAME,             Case No. 1:22-cv-306

    Plaintiff,                                            Barrett, J.
                                                            Bowman, M.J.
    v.

TRIHEALTH, INC., et al.,

    Defendants.

## REPORT AND RECOMMENDATION

On May 31, 2022, Plaintiff, proceeding *pro se*, filed an application to initiate litigation without payment of a filing fee against Defendants TriHealth, Inc. and the City of Cincinnati. By separate Order issued this date, Plaintiff has been granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. This matter is now before the Court for a *sua sponte* review of Plaintiff's complaint to determine whether the complaint, or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915(e)(2)(B). For the reasons that follow, Plaintiff's complaint should be DISMISSED.

    **I.      Background**

The undersigned takes judicial notice of the fact that this is the third case that Plaintiff has initiated without payment of fees in this Court. *See e.g., Blassingame v. Governor of the State of Ohio, et al.*, Case No. 1:21-cv-375-MWM-SKB (dismissed upon initial screening pursuant to 28 U.S.C. § 1915(e)(2) on August 23, 2021) and *Blassingame v. TriHealth, Inc.*, et al., Case No. 1:21-cv-395-ALM-KLL (pending). The latter case closely relates to the above-captioned case, insofar as both complaints arise out of the same incident, and both name

1

TriHealth Inc. and the City of Cincinnati, Ohio as Defendants. The incident that gave rise to both lawsuits occurred on November 5, 2020. Plaintiff alleges that on that day, he was physically assaulted by a TriHealth security officer at Good Samaritan Hospital, and was later threatened by other TriHealth security officers. Someone contacted the City of Cincinnati Police Department, and Plaintiff was subsequently arrested and charged with Disorderly Conduct and Criminal Trespassing.

Apart from the referenced common core of facts, Plaintiff has alleged different claims in each case. In Case No. 1:21-cv-396-ALM-KLL, Plaintiff identifies Good Samaritan Hospital and three individuals as additional defendants. There, Plaintiff alleges that all named Defendants are liable for denying Plaintiff emergency medical care under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. §1395dd, and the Rehabilitation Act, 29 U.S.C. § 794. (*Id*., Doc. 3 at 2, ¶1, PageID 40).

By contrast, in the above-captioned case, Plaintiff seeks relief for alleged violations of his constitutional rights under 42 U.S.C. § 1983 and related state laws, alleging that TriHealth and the City of Cincinnati "unlawfully and maliciously prosecuted Plaintiff" by filing and pursuing criminal charges in state court. Plaintiff further alleges that he was acquitted of the referenced Disorderly Conduct and Criminal Trespassing charges on August 6, 2021. (Complaint at Doc. 1-1, p. 3, ¶ 3, PageID 13). The above-captioned complaint purports to list seven causes of action, identified as: (1) Malice; (2) The Defendant[]s lacked probable cause; (3) false imprisonment; (4) Intentional Infliction of Emotional Distress; (5) Unreasonable Seizure (6) discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12112 and Title VII; and (7) Conspiracy to Interfere in Civil Rights, 42 U.S.C. § 1983 and § 12112 and Title VII.

    **II.**    **Screening Standard**

In enacting the original *in forma pauperis* statute, Congress recognized that a "litigant

whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez,* 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams,* 490 U.S. 319, 324 (1989)). To prevent such abusive litigation, Congress has authorized federal courts to dismiss an *in forma pauperis* complaint if they are satisfied that the action is frivolous or malicious. *Id.*; *see also* 28 U.S.C. § 1915(e)(2)(B)(i). A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke,* 490 U.S. at 328-29; *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the defendant is immune from suit or when plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke,* 490 U.S. at 327.

Congress also has authorized the *sua sponte* dismissal of complaints that fail to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii). A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). By the same token, however, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hill*, 630 F.3d at 470-71 ("dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim" under §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as

3

a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (citations omitted).

### III. Analysis

#### A. Interpreting Claims I - VII

Plaintiff alleges that federal jurisdiction exists based upon the Defendants' violations of his Fourth Amendment rights and various federal statutes, and asserts that this Court should exercise supplemental jurisdiction over related state claims. However, a number of the identified causes of action do not correspond with any cognizable federal claim. For example, in "Count I – Malice" Plaintiff alleges malicious intent by both Defendants. (Doc. 1-1 at 8-9, PageID 18-19). However, allegations of "malice" – standing alone - are not sufficient to state any cognizable federal claim as a matter of law. In "Count II," Plaintiff alleges that Defendants "lacked probable cause when they pursued criminal charges against" Plaintiff. (*Id*. at 9, PageID 19). Similar to the element of "malice" in Count I, "probable cause" is merely an element of other potential claims.[1] Thus, Counts I and II should be dismissed.

---

[1] For example, an arrest without probable cause constitutes an unreasonable seizure in violation of the Fourth Amendment. *Ingram v. City of Columbus,* 185 F.3d 579, 592-93 (6th Cir.1999). However, a warrantless arrest does not violate the Fourth Amendment if there is probable cause to make the arrest. *United States v. Dotson,* 49 F.3d 227, 229 (6th Cir.1995).

4

In "Count III," Plaintiff gets closer to the mark by alleging false imprisonment (a *potentially* cognizable claim) in violation of § 1983 and state law based on an allegation that City police officers "under the color of their authority as police officers" detained Plaintiff and deprived him of his liberty "without due process of law." (Doc. 1-1 at 10, PageID 20).

"Count IV" also states a *potentially* cognizable state law claim for intentional infliction of emotional distress, by alleging that both Defendants acted with "wanton and malicious" intent and caused him "severe emotional distress." (*Id.* at 10-11, PageID 20-21). Although Count IV also cites to 42 U.S.C. § 1983, no corresponding claim for intentional infliction of emotional distress exists under federal law.

In "Count V," labeled "Unreasonable Seizure," Plaintiff alleges that Defendants' actions "were based upon Plaintiff's race" in violation of the Fourteenth Amendment and § 1983. (Doc. 1-1 at 11-12, PageID 21-22). Plaintiff alleges that both Defendants "stopped, questioned, and accused the only African American male patient in the Emergency Room at the time." (*Id*. at 11, PageID 21). He further alleges that the City's actions in particular, through its police department, violated Plaintiff's Fourth Amendment rights to be free from unreasonable seizure. (*Id*. at 12, PageID 22). Again, the undersigned construes this claim as a *potentially* cognizable claim for false arrest and/or for selective prosecution under the Equal Protection Clause.

In Count VI, Plaintiff alleges "race and gender" discrimination by Defendant TriHeatlh in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112 and Title VII of the Civil Rights Act of 1964. (*Id.* at 13, PageID 23). Plaintiff further alleges in Count VI that the City violated the ADA and Title VII by taking "actions on behalf of Defendant Trihealth, Inc., in furtherance of the business of Defendant TriHeatlth, Inc."

In Count VII, Plaintiff generally alleges a "conspiracy to interfere in civil rights" in violation of 42 U.S.C. § 1983, as well as in violation of the ADA and Title VII. Plaintiff alleges that

"Defendants colluded together to cause the false imprisonment and intentional infliction of emotional distress on Plaintiff." *Id.* He further alleges that TriHealth "collaborated with Defendant City of Cincinnati to violate Plaintiff's constitutional rights." (*Id.* at 14, PageID 24).

### B. Plaintiff Fails to State Any Claim Under § 1983

Construed liberally, the undersigned understands Counts III, IV, and V to be asserting claims for unlawful or false arrest and/or false imprisonment and malicious prosecution in violation of the Fourth and Fourteenth Amendments under 42 U.S.C. §1983,[2] along with related state claims. "To state a viable claim under 42 U.S.C. § 1983, a plaintiff 'must allege that he was deprived of a right secured by the Federal Constitution or laws of the United States by a person acting under color of state law.'" *Smith v. Detroit Entertainment L.L.C.*, 338 F.Supp.2d 775, 778 (E.D. Mich. 2004) (quoting *Wolotsky v. Huhn,* 960 F.2d 1331, 1335 (6th Cir.1992)).

Here, Plaintiff fails to state any claim under § 1983 against Defendant TriHealth, because that Defendant is not a state actor, and there are no allegations that TriHealth acted under "color of state law."[3] *See also Moss v. Columbus Bd. Of Educ.,* 98 Fed. Appx. 393, 395 (6th Cir. 2004) (failure to allege nongovernmental defendants acted under color of state law precludes § 1983 claim); *Ealy v. O'McCollum*, 2009 WL 723133, at *3 (S.D. Ohio March 16, 2009) (dismissing claim that failed to allege facts to demonstrate that the Good Samaritan Hospital police acted under color of state law).

While the City of Cincinnati is a governmental entity that could theoretically act under color of state law, Plaintiff's allegations against the City are deficient for a different reason. "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees

---

[2]Plaintiff's claims for false arrest and for false imprisonment are essentially the same, since the alleged false imprisonment arises out of an alleged false arrest. *See Walker v. Schaeffer,* 854 F.2d 138, 142 (6th Cir.1988).
[3]To the contrary, Plaintiff alleges that TriHeatlth's security staff acted "under the color of their [TriHeatlth's own] authority." (Doc. 1-1 at 10, PageID 20).

6

or agents. Instead, it is when execution of a government's policy or custom ... inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Leach v. Shelby County Sheriff,* 891 F.2d 1241, 1245-46 (6th Cir.1989) Here, Plaintiff does not allege any policy or custom by the City of Cincinnati that allegedly caused his injury. This Court will not infer allegations that are not pleaded. Plaintiff's allegations all stem from a single incident that allegedly occurred on November 5, 2020. "[A] single instance of alleged unconstitutional conduct will not suffice to state a Section 1983 claim against a municipality." *Snyder v. U.S.*, 990 F.Supp.2d 818, 845 (S.D. Ohio 2014). Plaintiff therefore fails to state a § 1983 claim against the City of Cincinnati. *Accord Stump v. City of Mount Vernon*, 2019 WL 176325, at *2 (S.D. Ohio Jan. 11, 2019) (dismissing on initial screening complaint where plaintiff failed to allege that any official policy or custom resulted in the violation of his constitutional rights).

Apart from the fact that Plaintiff has failed to allege any official policy or custom by the City of Cincinnati, many of his allegations are so conclusory as to fail to state any claim. For example, Count V - Plaintiff's Equal Protection Clause claim - alleges that he was singled out for arrest as "the only African American male patient in the Emergency Room." (Doc. 1-1 at 11, PageID 21). "The Equal Protection Clause of the Fourteenth Amendment provides citizens a degree of protection independent of the Fourth Amendment protection against unreasonable searches and seizures." *United States v. Avery*, 137 F.3d 343, 352 (6th Cir. 1997). However, in the absence of *any* supporting factual allegations other than the racial composition of the emergency room on the date in question, Plaintiff's conclusory allegation is insufficient to state a claim as a matter of law. *Daniels v. City of Wyoming*, 2017 WL 7661477 at *3 (6th Cir. Oct. 5, 2017) (affirming dismissal of claim based upon failure to failure to plead

sufficient facts to support otherwise conclusory allegation of selective prosecution based upon race).

### C. Count VI Fails to State Any Claim Under Title VII or the ADA

In Count VI, Plaintiff alleges that the Defendants discriminated against him based upon his "race and gender" in violation of both Title VII and the ADA. But Title VII covers *employment* discrimination on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). None of Plaintiff's allegations or claims related to employment discrimination. Therefore, he fails to state a claim under Title VII. *See Burton v. City of Memphis*, 2013 WL 5924379, at *3 (W.D. Tenn. Oct. 31, 2013) (dismissing Title VII claim not related to employment).

Count VI also fails to state any claim under the ADA. Title II of the ADA provides, in pertinent part, that no qualified individual with a disability shall, because of that disability, "be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Because Plaintiff alleges discrimination based solely upon "race and gender" without identifying any qualifying disability, he fails to state any claim under the ADA.

### D. Count VII Fails to State a Conspiracy Claim

In Count VII, Plaintiff alleges that the two Defendants are liable for civil conspiracy insofar as they "worked together to cause the false imprisonment of Plaintiff," and "to cause the violation of Plaintiff's constitutional rights." (Doc. 1-1 at 13, PageID 23). He alleges that the Defendants' "conspiracy" violates § 1983 as well as the ADA and Title VII. In addition to the failure of the complaint to state any claims under any of the referenced federal statutes, Plaintiff's "conspiracy" claim is entirely conclusory. "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported

8

by material facts will not be sufficient to state such a claim under § 1983." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987) (citing *Jaco v. Bloechle,* 739 F.2d 239, 245 (6th Cir. 1984)).

### E. The Court Should Decline Supplemental Jurisdiction

When federal jurisdiction is premised upon federal claims that have been dismissed, district courts should generally decline to exercise supplemental jurisdiction. *See Landefeld v. Marion Gen. Hosp., Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1993). Because the undersigned recommends dismissal of all federal claims in this case for failure to state a claim, any related state claims also should be dismissed.

### IV. Conclusion and Recommendation

For the reasons stated, Plaintiff's complaint fails to state a claim upon which relief may be granted. Therefore, **IT IS RECOMMENDED** that this action be **DISMISSED WITH PREJUDICE**. It is further **RECOMMENDED** that the Court certify pursuant to 28 U.S.C. § 1915(a) that for the foregoing reasons an appeal of any Order adopting this Report and Recommendation would not be taken in good faith and therefore deny Plaintiff leave to appeal *in forma pauperis*.

     s/Stephanie K. Bowman
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| DERRICK D. BLASSINGAME, | Case No. 1:22-cv-306 |
| Plaintiff, | Barrett, J. |
| v. | Bowman, M.J. |
| TRIHEALTH, INC., et al., | |
| Defendants. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).